IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHY MARTINEZ,                          No. CIV.S-04-0637 DAD

    Plaintiff,

  v.                                     ORDER

JO ANNE B. BARNHART,
Commissioner of Social
Security,

    Defendant.
_____/

    This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

**PROCEDURAL BACKGROUND**

    Plaintiff Kathy Jo Martinez applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). (Transcript (Tr.) at 48-50.) The Commissioner denied

1

plaintiff's application initially and on reconsideration.  (Tr. at 42-45, 35-39.)  Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on February 13, 2003, at which time plaintiff was represented by counsel.  (Tr. at 242-55.) In a decision issued on March 26, 2003, the ALJ determined that plaintiff was not disabled.  (Tr. at 14-23.)  The ALJ entered the following findings:

>   1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
>   2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
>   3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
>   4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
>   5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
>   6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
>
>   7. The claimant has the residual functional capacity for a medium level

2

of exertion. She can lift 25 pounds frequently and 50 pounds occasionally and sit, stand, and walk six hours during a workday. Bending, stooping, and crouching are limited to occasional. She is precluded from a dusty or fumous atmosphere. She should avoid leaning on her elbows. She is limited to simple unskilled work.

8. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

10. The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

12. The claimant has the residual functional capacity to perform substantially all of the full range of medium work (20 CFR § 404.1567).

13. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, Medical-Vocational Rule 203.29-.30, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

14. The claimant's capacity for medium work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

15. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the

3

1 |         date of this decision (20 CFR § 404.1520(f)).

(Tr. at 22-23.)  The Appeals Council declined review of the ALJ's decision on February 2, 2004.  (Tr. at 5-9.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on March 30, 2004.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting

4

evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to

step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances four arguments in her motion for summary judgment.  First, plaintiff asserts that the ALJ erred in his treatment of the opinion of Steve W. Friend, M.D., plaintiff's treating physician.  Second, plaintiff maintains that the ALJ erred in discounting the testimony of plaintiff regarding the severity of her symptoms and the resulting limitations those symptoms place upon her.  Third, plaintiff contends that the Appeals Council erred in rejecting the new evidence submitted to it when plaintiff sought review of the ALJ's decision.  Fourth, plaintiff argues that the ALJ erred in his reliance on the Medical-Vocational Guidelines (the "grids") in determining whether plaintiff is capable of performing any other work that exists in the national economy.  The court addresses plaintiff's arguments below.

Beginning with plaintiff's first argument, it is well-established that the medical opinion of a treating physician is entitled to special weight.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Id. (citing Baxter v.

6

Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, Dr. Friend opined in a very brief handwritten note on April 25, 2001, that plaintiff "must be off from work beginning 4-25-01 and remain off work until further notice."  (Tr. at 129.) Plaintiff points out that the ALJ failed to specifically mention this note in his decision.  However, to be fair, there was not much for the ALJ to say about the brief and unilluminating note, which is quoted above in its entirety.  Of course, an ALJ is not required to expressly mention each and every medical document within the administrative record.  See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)("The Secretary, however, need not discuss *all* evidence presented to her.  Rather, she must explain why "significant probative evidence has been rejected.").

Moreover, the ALJ clearly discussed Dr. Friend's more substantive treatment notes covering the period from April of 2001 to October of 2002.  (Tr. at 120-29, 214-36.)  Those notes, which are mostly handwritten and illegible in places, indicate that plaintiff generally was assessed with a back "sprain/strain" as well as a left ulna fracture and post-concussive syndrome.  (Id.)  Those treatment notes do not indicate that plaintiff is so functionally limited as to be precluded from all work activity.  (Id.)

1        In his opinion, the ALJ also accurately explained that
2   other medical evidence in the record, such as the opinions of the
3   nonexamining state agency physician and Rebecca Jordan, M.D.,
4   indicate that plaintiff is capable of the physical demands of work.
5   (Tr. at 192-97, 202-09.)  Indeed, taken alone the opinion of Dr.
6   Jordan, who independently examined plaintiff, is substantial evidence
7   supporting the ALJ's decision.  See Andrews v. Shalala, 53 F.3d 1035,
8   1041 (9th Cir. 1995)("Where the opinion of the claimant's treating
9   physician is contradicted, and the opinion of a nontreating source is
10  based on independent clinical findings that differ from those of the
11  treating physician, the opinion of the nontreating source may itself
12  be substantial evidence[.]").
13       For these reasons, the court finds that the ALJ properly
14  distinguished the general opinion of Dr. Friend based on specific and
15  legitimate reasons supported by substantial evidence in the record.
16       Turning to plaintiff's credibility argument, it is well-
17  established that the determination of credibility is a function of
18  the ALJ, acting on behalf of the Commissioner.  See Saelee v. Chater,
19  94 F.3d 520, 522 (9th Cir. 1995).  An ALJ's assessment of credibility
20  should, in general, be given great weight.  Nyman v. Heckler, 779
21  F.2d 528, 530-31 (9th Cir. 1985).  Thus, questions of credibility and
22  resolution of conflicts in the testimony are functions solely of the
23  Commissioner.  Morgan, 169 F.3d at 599.  In evaluating a claimant's
24  subjective testimony regarding pain and the severity of his or her
25  symptoms an ALJ may consider the presence or absence of supporting
26  objective medical evidence along with other factors.  See Bunnell v.

1  Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen v.
2  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Ordinary techniques of
3  credibility evaluation may be employed, and the adjudicator may take
4  into account prior inconsistent statements or a lack of candor by the
5  witness.  See Fair, 885 F.2d at 604 n.5.
6          Nonetheless, an ALJ's rejection of a claimant's testimony
7  must be supported by specific findings.  Morgan, 169 F.3d at 599;
8  Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller,
9  770 F.2d at 848).  Once a claimant has presented evidence of an
10 underlying impairment, the ALJ may not discredit the claimant's
11 testimony as to the severity of his or her symptoms merely because
12 the testimony is unsupported by objective medical evidence.  Reddick
13 v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Chater, 119
14 F.3d 789, 792 (9th Cir. 1997).  Rather, "the ALJ can reject the
15 claimant's testimony about the severity of [his or] her symptoms only
16 by offering specific, clear and convincing reasons for doing so."
17 Light, 119 F.3d at 792.  See also Reddick, 157 F.3d at 722.
18         Here, plaintiff's medical records document conditions which
19 might reasonably be expected to cause the symptoms alleged by
20 plaintiff.  However, while plaintiff alleges that she is totally
21 unable to work due to the severity of her symptoms stemming from
22 these conditions, the ALJ made specific and detailed findings in not
23 fully crediting plaintiff's testimony in this regard.  For example,
24 the ALJ found plaintiff less than credible due to the findings of Dr.
25 Jordan and the nonexamining state agency physician who found
26 plaintiff capable of performing medium work (Tr. at 192-97, 202-09)

as well the opinions of examining psychologist David C. Richwerger, Ed.D. and the nonexamining state agency physicians who evaluated plaintiff's mental residual functional capacity (Tr. at 130-35, 140-57, 170-87).

The ALJ also accurately observed that plaintiff admitted to the examining psychologist that she is able to engage in household chores, errands, shopping and driving as well as camping.  (Tr. at 132.)  The court recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  See Reddick, 157 F.3d at 722.  However, the extent of plaintiff's daily activities, particularly when considered in combination with the other evidence cited above, is probative of her ability to perform work.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

With respect to plaintiff's alleged mental limitations, the ALJ accurately observed that plaintiff has not "recently received significant or regular treatment for emotional difficulties."  (Tr. at 20.)  See Johnson, 60 F.3d at 1434 (considering claimant's conservative treatment as inconsistent with the debilitating condition claimed in upholding denial of benefits); Fair, 885 F.2d at 604 (same).  The court recognizes that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)(quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).  However, plaintiff's treatment notes indicate that Dr. Friend assessed plaintiff with "anxiety" and

10

prescribed her medications in light of that assessment.  (Tr. at 216, 221-22.)  It is reasonable to infer that if plaintiff's mental impairment were so severe as to be debilitating, Dr. Friend would have referred plaintiff to more aggressive treatment, such as psychotherapy and/or further medication management by a psychiatrist.

Finally, it is worth noting that the ALJ did not totally reject plaintiff's subjective complaints.  In this regard, the ALJ limited plaintiff to medium, unskilled work and thus obviously credited her complaints to an extent.

For these reasons the court finds that the ALJ fairly characterized the record and sufficiently stated specific, clear and convincing reasons for not fully crediting plaintiff's testimony regarding the severity of her symptoms.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).  Plaintiff's argument to the contrary must be rejected.

Plaintiff's third argument is that the Appeals Council erred in rejecting an August 11, 2003, residual functional capacity assessment form submitted in connection with plaintiff's request for review of the ALJ's decision.  That form was completed by George Scarmon, M.D.  (Tr. at 239-41.)  The court agrees with defendant that the Appeals Council did not err in its treatment of the form completed by Dr. Scarmon.  In rejecting the assessment, the Appeals Council explained that "there are no clinical or laboratory findings submitted with th[e] assessment" to support the limitations set forth therein.  (Tr. at 6.)  The form on which the assessment in question
/////

11

appears is very conclusory.[1]  Also, while plaintiff asserts that Dr. Scarmon was her new treating physician as of August 11, 2003, there are no records from Dr. Scarmon in the record to shed light on the actual extent of plaintiff's relationship with Dr. Scarmon or how much he knew about plaintiff's condition.  The Appeals Council was entitled to reject Dr. Scarmon's report for this reason.  A treating physician's opinion need not be accepted when it is brief and conclusory in form, with no clinical findings to support its conclusions.  See Young v. Heckler, 803 F .2d 963, 968 (9th Cir. 1986).

       Finally, plaintiff argues that the ALJ should have heard testimony from a vocational expert due to plaintiff's alleged nonexertional impairments.  At the fifth and final step of the sequential evaluation process, the Commissioner can satisfy the burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by either (1) applying the Medical-Vocational Guidelines (the "grids") in appropriate circumstances or (2) taking the testimony of a vocational expert ("VE").  See Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988); Burkhart, 856 F.2d at 1340 (citing

---

[1] The form was completed on August 11, 2003, almost five months after the ALJ's written decision, and contains no discussion regarding plaintiff's condition at any time prior to that date. Thus, it is unclear why the Appeals Council considered it all. See 20 C.F.R. § 404.970(b) ("Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision"). Nonetheless, the Appeals Council expressly indicated in its Notice of Appeals Council Action that it had considered this evidence.

12

Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)).

The grids are designed to show available work in the national economy for individuals with exertional (i.e., strength) limitations, as impacted by the factors of age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e). They may be utilized as long as they "accurately and completely describe the claimant's abilities and limitations." Burkhart, 856 F.2d at 1340 (citing Jones, 760 F.2d at 998). See also Reddick, 157 F.3d at 729; 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(b). However, when a claimant's nonexertional limitations are sufficiently severe to significantly limit the range of work permitted by exertional limitations, the grids are inapplicable. See Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).

In arguing that the ALJ erred in relying on the grids, plaintiff asserts that the ALJ should have heard from a vocational expert due to plaintiff's nonexertional limitations related to her headaches and depression and resulting cognitive difficulties. Admittedly, the ALJ found plaintiff's post-concussive syndrome and depression to be severe impairments. (Tr. at 19.) However, the ALJ also determined that plaintiff's mental impairments were not sufficiently severe to significantly limit the range of work permitted by plaintiff's exertional limitations. More specifically, the ALJ addressed plaintiff's cognitive difficulties by specifically

/////

limiting her to unskilled work.[2]  Unskilled work is a type of work experience expressly contemplated by the grids.  <u>See</u>, <u>e.g.</u>, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 203.28 (directing finding of "not disabled" for younger individual with a high school education, a capacity for medium work and a vocational background in unskilled work).  Because the ALJ used the grids only after determining that plaintiff's nonexertional limitations did not significantly limit her ability to perform jobs in her skill category, testimony from a vocational expert was not necessary.  <u>See</u> <u>Ortiz v. Secretary of Health and Human Services</u>, 890 F.2d 520, 526 (1st Cir. 1989) ("[S]o long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated."); <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 37 (D. R.I. 1999), <u>aff'd</u> 230 F. 3d 1347 (1st Cir. 2000); <u>Guyton v. Apfel</u>, 20 F. Supp. 2d 156, 162 (D. Mass. 1998).

Plaintiff also briefly argues that the nonexertional limitations related to her asthma precluded use of the grids.  While

---

[2]  Unskilled work is defined as work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time....  [L]ittle specific vocational preparation and judgment are needed."  20 C.F.R. §§ 404.1568(a), 416.968(a).  In addition, "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) ...."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g).  <u>See also</u> Social Security Ruling No. 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

the ALJ did not clearly indicate in his decision whether plaintiff's asthma was a severe impairment (Tr. at 19, 22), he apparently found it severe in light of the inclusion in the residual functional capacity determination that plaintiff be "precluded from a dusty or fumous atmosphere." (Tr. at 21, 22.) Similar to his treatment of plaintiff's mental impairments, the ALJ determined that plaintiff's asthma did not significantly limit the range of work permitted by plaintiff's exertional limitations. In this regard, the ALJ relied on Social Security Ruling No. 85-15 which states: "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." Social Security Ruling No. 85-15, 1985 WL 56857, at *8; see also Wafer v. Sullivan, 1994 WL 141649, at *10 n.9 (N.D. Cal. 1994)(rejecting argument that inability to tolerate extreme heat was nonexertional limitation that required vocational expert testimony).[3] Because the ALJ used the grids only after determining that the

---

[3] Social Security Ruling No. 85-15 also states: "Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." Social Security Ruling No. 85-15, 1985 WL 56857, at *8 (emphasis added). While the ALJ did not specifically indicate that plaintiff is limited with respect to excessive dust, no evidence in the record suggests the contrary (i.e., that plaintiff has a medical restriction to avoid "very little" dust). Indeed, in her motion for summary judgment plaintiff only mentions her history of asthma in passing and Dr. Jordan, the physician upon whom the ALJ relied in finding plaintiff limited due to her asthma, seemed minimally concerned about the asthma, opining only that plaintiff's history of asthma "suggests limitation" in exposure to dust, fumes and smoke. (Tr. at 196.) Plaintiff's asthma also received virtually no attention at the administrative hearing.

15

nonexertional limitations related to plaintiff's asthma did not significantly limit her ability to perform medium, unskilled jobs, testimony from a vocational expert was not necessary.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: September 20, 2005.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.socsec\martinez0637.order